MAXWELL, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:
 

 ¶86. If Clarksdale's annexation of Proposed Annexation Areas 1 and 2 was unreasonable, then its annexation of Areas 3, 4, and 5 is even more unreasonable.
 

 ¶87. The twelve indicia of reasonableness "are not separate, independent tests which are conclusive as to reasonableness."
 
 In re City of Jackson
 
 ,
 
 691 So.2d 978
 
 , 980 (Miss. 1997). Rather, they serve as a guide for the court when making an "ultimate determination"-"whether the annexation is reasonable under the totality of the circumstances."
 

 Id.
 

 (quoting
 
 W. Line Consol. Sch. Dist. v. City of Greenville
 
 ,
 
 465 So.2d 1057
 
 , 1059 (Miss. 1985) ). Both the chancellor's final judgment and the majority opinion of this Court dutifully go down the check list of each indicium of reasonableness. But neither connects the dots and articulates why, under the totality of the circumstances, annexation of Areas 3, 4, and 5 was a reasonable move for a city with a declining population and ample undeveloped land.
 
 [3]
 

 ¶88. They say a picture is worth a thousand words. And here, one need only look at "the big picture"-that is, the maps
 showing the land Clarksdale already annexed in 1992 and the land it now seeks to annex-to assess the reasonableness of the city's claimed need to plan for and capitalize on the future I-69 corridor.
 

 ¶89. As shown by the 1991 map below, a quarter century ago Clarksdale annexed parts of Coahoma County to ensure the city extended to the future I-69. The 1992 annexation took in what is now the interchanges of the Highway 61 bypass with Highway 6, Highway 49, and future I-69, as well as the northern half of the interchange with New Africa Road. But in the decades since,
 
 none
 
 of that land has been significantly developed. So to claim development along the future I-69 corridor as the need to expand is dubious at best.
 

 ¶90. Skepticism grows further when one looks at the second map of Proposed Annexation Areas 3, 4, and 5 and the commercial businesses and residential properties located therein. First, these areas are not adjacent to developed areas of Clarksdale. Instead, the city "leap frogs"
 
 [4]
 
 large swaths of undeveloped, agricultural land, reaching out to grab the nearest businesses and residences. Second, from this map, it is clear that it is not just the land near the future I-69 corridor Clarksdale
 seeks. Instead, it is specifically and almost exclusively land that already has houses and commercial property-in other words, people and entities that can be taxed. So, I find it hard not to read this map as anything other than a "tax grab"-something this Court has always viewed critically.
 
 See
 

 In re City of Jackson
 
 ,
 
 691 So.2d at 982
 
 .
 

 ¶91. In
 
 In re City of Jackson
 
 , the capital city similarly tried to jump over undeveloped city areas to annex already developed portions of Hinds County-an effort this Court found to be unreasonable under the totality of the circumstances.
 

 Id.
 

 at 980-91
 
 . Instead, "[b]efore the City of Jackson [could] annex[ ] more land and residents for which it has had to extend infrastructure and provide services," this Court held that Jackson "should make an effort to extend that infrastructure to the vacant, developable land within the existing boundaries and take steps to encourage development in those areas."
 

 Id.
 

 at 983
 
 . Consistent with
 
 In re City of Jackson
 
 , Clarksdale should have to do the same thing. Before it annexes more land, residents, and taxable businesses for which it will have to provide additional infrastructure and services, Clarksdale should at the very minimum make an effort to develop the areas that it already annexed in 1992 along the future I-69 corridor.
 

 ¶92. Until then, to claim the need to annex to capitalize on and uniformly govern the development along the future I-69 corridor is unreasonable. Therefore, I dissent in part. While I would affirm the portion of the chancellor's judgment finding the annexation of Areas 1 and 2 to be unreasonable, I would reverse the portion of the judgment regarding Areas 3, 4, and 5 and instead render a judgment finding the annexation of these areas to be unreasonable as well.
 

 RANDOLPH, P.J., AND ISHEE, J., JOIN THIS OPINION.
 

 "While it is true that this Court has allowed annexations even though there is not significant population growth and/or a relatively high percentage of undeveloped land within the existing city limits," this Court has been clear that the "presence of these factors should, at the very least, be an impediment to annexation."
 
 In re City of Jackson
 
 ,
 
 691 So.2d at 981
 
 .
 

 In
 
 In re City of Jackson
 
 , "leap frog development" was also at issue-that is, "the interdispersement of large vacant tracts of land between developed portions of land." As the objectors' expert in that case explained, having large areas of vacant land between developed portions of the city "tends to be a drain on the economy and fiscal structure of the city," because the city has to expend "significant resources to extend infrastructure into vacant areas and through vacant areas" to provide services to the developed area.
 

 Id.
 

 at 981-82
 
 . In other words, to provide infrastructure and services to Areas 3, 4, and 5, Clarksdale would have to build and travel across large vacant areas.